# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>JOHN L. JOHNSON,<br><br>    Debtor-Appellee.<br>------------------------------------------------------------<br>UNITED STATES OF AMERICA,<br><br>    Appellant,<br><br>v.<br><br>JOHN L. JOHNSON,<br><br>    Appellee. | Case No. 17 C 5224 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

To recover retirement benefits that John L. Johnson fraudulently obtained, the Social Security Administration (SSA) began to withhold disability-related benefits he was receiving from a separate program. After Johnson declared bankruptcy, the government asked the bankruptcy court to confirm that it could continue to withhold funds irrespective of the automatic stay under 11 U.S.C. § 362(a). The SSA argued that it could continue to withhold Johnson's disability benefit payments despite the automatic stay, because the withholding was a recoupment and therefore was not subject to the stay. The bankruptcy court disagreed. The government has appealed.

## Background

The Social Security system comprises multiple programs, including one that

provides support for disabled individuals (SSI) and another that provides support for retired individuals (RIB). For years, John L. Johnson received SSI benefits. He then began to collect RIB benefits to which he was not entitled through a fraudulently-obtained second Social Security number. Though the precise dates of his scheme are not clear from the record, it appears that the Office of the Inspector General of the SSA notified Johnson that it was aware he had wrongly collected RIB benefits for thirty-nine months between October 2011 and December 2014.

The SSA assessed a penalty of $57,905 against Johnson: $18,905, representing the value of the wrongfully obtained benefits, plus $39,000, representing thirty-nine $1,000 fines, one for each month in which Johnson wrongfully received RIB benefits. The maximum penalty the SSA could have levied was $195,000. D.E. 6, Ex. 2 at 88 (Notice of Monetary Penalty).[1] Pursuant to regulation, the government began withholding all of Johnson's monthly SSI payments to recover the amount of the overpayment and penalties assessed against him.

Johnson filed a Chapter 13 bankruptcy petition on June 20, 2016. In connection with this filing, Johnson declared that he was 68 years old, worked approximately twelve hours per week given his poor health, earned $8.25 per hour, and could not regularly afford food. D.E. 6, Ex. 2 at 110 (Decl. of Debtor).

A bankruptcy petition triggers an automatic stay of most proceedings against the debtor. 11 U.S.C. § 362(a), (b). The SSA filed a motion before the bankruptcy court in which it asked the court to rule that the automatic stay did not apply to its decision to

---

[1] Because some of the exhibits are made up of multiple inconsistently-numbered documents, the Court uses the ECF page numbering for ease of reference.

withhold Johnson's SSI benefits, because it was engaged in a recoupment to which the automatic stay does not apply. On December 1, 2016, the bankruptcy court held that the automatic stay applied; the court found that the SSA's withholding did not constitute a recoupment. The bankruptcy court adopted the reasoning of the Third Circuit in *Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984), in which that court concluded that the SSA could not use the doctrine of recoupment to recover Social Security overpayments, as recoupment is generally limited to parties linked by contract. *Id.* at 875-76.

In the same motion, the SSA argued in the alternative that, even if the automatic stay applied, the court should lift the stay to allow the agency to continue to collect Johnson's debt. The bankruptcy court did not rule on that aspect of the SSA's motion in December 2016 when it found that the automatic stay applied. Rather, the court denied the request to lift the stay about six months later, on June 29, 2017, the same date that it confirmed Johnson's Chapter 13 plan. The bankruptcy court separately found that Johnson's debt to the SSA was non-dischargeable. On July 13, 2017, the government appealed the bankruptcy court's order finding that the automatic stay applies.

## Discussion

### I. Timeliness

Under bankruptcy procedure, a notice of appeal must be filed "within 14 days after entry of the judgment, order, or decree being appealed." Fed. R. Bankr. P. 8002(a)(1). Johnson contends that the government's appeal is not timely because it waited until July 2017 to appeal the bankruptcy court's December 1, 2016 order. The government argues that its appeal is timely, because the December 1 order was not final. It contends that the bankruptcy court did not enter a final order until June 29,

3

2017, when it denied the government's request for relief from the stay. D.E. 1, Ex. 3 at 10 (bankruptcy court docket). Courts generally treat a denial of relief from the automatic stay as a final, appealable decision. *Matter of Wade*, 991 F.2d 402, 406 (7th Cir. 1993). The government filed a notice of appeal within fourteen days of that date, specifically on July 13, 2017. D.E. 1, Ex. 3 at 11. But on appeal, the government challenges not the denial of relief from the automatic stay, but the bankruptcy court's June 2017 determination that the stay applied. If the fourteen-day period under Rule 8002(a)(1) is measured from the June 29, 2017 order, the government's appeal is timely. If it is measured from the December 1, 2016 order, the appeal is not timely.

The Court concludes the appeal is timely because the December 1 order applying the automatic stay was not a final, appealable order. A district court has appellate jurisdiction only over appeals from a bankruptcy court's "final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). To determine whether an order in bankruptcy court is final, the Court analyzes whether the order "resolves one of the individual controversies that might exist as a standalone suit outside of the bankruptcy." *Germeraad v. Powers*, 826 F.3d 962, 965 (7th Cir. 2016). *See also Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) (describing standard for final, appealable orders of bankruptcy courts).

The court's order finding that the automatic stay applied was not final because it did not resolve the controversy between the parties. By way of analogy, the confirmation of a bankruptcy plan is final, because it "fixes" the rights of the parties, but the denial of confirmation of a proposed plan is not final, because the parties' rights remain "unsettled." *Id.* at 1692-93. Just as an order denying confirmation allows for the

4

possibility of discharge, an order confirming that an automatic stay applies (like the one issued by the bankruptcy court in June 2016) still allows for the possibility of relief from the stay. *Id.* at 1693. After the June 2016 order, the government still had the chance of avoiding the stay through its request for relief from the stay, a question on which the bankruptcy court deferred ruling. The Court finds unpersuasive Johnson's reliance on *Vitalich v. Bank of New York Mellon*, 569 B.R. 502, 506 (N.D. Cal. 2016). *Vitalich* dealt with an appeal of an order terminating an automatic stay, which unlike in this case resolved the status of the stay. *Id.*

In sum, the bankruptcy court's December 2016 decision that the automatic stay applied was not a final and appealable decision. The decision became final on June 29, 2017, when the court ruled on the remainder of the government's motion and denied its request to lift the stay, thereby fixing the rights implicated by the stay. Thus this appeal is timely because the government filed its notice of appeal within fourteen days of June 29.

## II. Issue preclusion

Johnson contends that the government cannot challenge the terms of his plan, because the plan, once confirmed, has issue-preclusive effect. The government responds that the plan does not preclude its efforts to recoup because it is silent on the question of recoupment.

Issue preclusion, sometimes called collateral estoppel, prevents a party from relitigating an issue "that has been actually litigated and decided in the initial litigation." *Barnett v. Stern*, 909 F.2d 973, 977 n.5 (7th Cir. 1990) (federal preclusion law applies to a prior action brought in a bankruptcy court). Johnson contends that "the order

5

confirming the plan is binding, and SSA must accept payments through it."  Appellee's

Resp. Br. at 6.

The confirmation of the plan does not preclude the government from seeking review of the plan through appellate review.  A creditor may challenge a confirmed bankruptcy plan on appeal.  *Bullard*, 135 S. Ct. at 1692; *Matter of Chappell*, 984 F.2d 775, 782 (7th Cir. 1993).  Thus if what Johnson is contending is that the plan effectively denies recoupment, then the government unquestionably would be entitled to appeal that determination.

It is conceivable that Johnson is contending that the government appealed from the wrong ruling, that is, it did not appeal from the decision to confirm the plan but instead appealed from the decision to apply the automatic stay.  But if Johnson is right about the preclusive effect of the plan vis-à-vis recoupment, that aspect of the plan is predicated on the bankruptcy court's earlier order concluding that the stay does not apply.  Johnson has provided no reasonable basis to preclude the government's appeal from the specific decision it challenges simply because that decision was effectively incorporated into the court-approved plan.

III. **Recoupment**

The government argues that the bankruptcy court wrongly held that the automatic stay precluded the SSA from recovering the RIB benefits Johnson improperly collected by withholding his monthly SSI payments.  "A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo."  *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004).

The government contends that it was engaged in recoupment, which it argues is

not subject to the automatic stay. "Recoupment is a defense whereby the creditor claims that a debtor's claim is based on a transaction in which the creditor has a claim against the debtor, and equity demands that the debtor's claim cannot be considered without taking account of the creditor's claim." *In re Chapman*, 265 B.R. 796, 807 (Bankr. N.D. Ill. 2001) (citation omitted). This defense, which is not expressly referenced in the bankruptcy code, arises from principles of equity. A significant body of authority holds that recoupment does not violate the automatic stay. *See id.* (collecting cases). Recoupment is related to but different from the concept of setoff, which also arises when a creditor and debtor are both indebted to the other. Setoff, unlike recoupment, does not require the debts arise from the same transaction, and it is not exempted from the automatic stay. 11 U.S.C. § 362(a)(7).

In *In re Holyoke Nursing Home, Inc.*, 372 F.3d 1 (1st Cir. 2004), the First Circuit offered two hypotheticals to explain the difference between recoupment and setoff. The court's first example involved A, who purchased from B a truck worth $1000 and then learned he would have to spend $100 to bring the truck to working condition. If A sent B a check for $900, the $100 difference would amount to a recoupment, "because the reciprocal obligations arose out of the same transaction, *viz.*, the purchase-sale of the truck." *Id.* at 3-4. The court's second example involved the same purchase of a truck by A from B. Before buying the truck from B, A had sold B a bicycle for $100, which B had never paid. If, in this situation, A sent B $900, deducting the $100 that B owed for the bicycle, A would be engaging in a setoff, "because the mutual obligations did not arise out of the same transaction, but from different transactions, *viz.*, the sale of the bicycle and the sale of the truck." *Id.* Under the law, the automatic stay under 11

7

U.S.C. § 362 does not apply to a recoupment, but it does apply to a setoff. *Id.*

The issue before the Court is whether the bankruptcy court correctly held that the government was not engaged in recoupment when it withheld Johnson's SSI benefits to recover the debt he incurred in the RIB program. The Court first lays out the parties' competing arguments, then reviews the relevant law, and last provides its own analysis.

### A. Parties' arguments

The government argues that recoupment may occur "when a statutory directive requires an agency to recover prior overpayment debts from current benefit payments . . . ." Appellant's Reply Br. at 5. The government relies on the fact that the Social Security Act and regulations require the SSA to withhold Johnson's SSI benefits to recover the fraudulently-obtained RIB payments he unlawfully collected. *See, e.g.*, 42 U.S.C. § 404(a); 20 C.F.R. § 404.502. The government cites as support decisions by the First, Ninth, and D.C. Circuits, all of which concluded that withholdings of overpayments required by the Medicare statutes functioned as recoupments. (The Court reviews these cases in the next section.) The government also argues that the debts between Johnson and the SSA are connected by a "logical relationship," the standard it urges the Court to adopt to analyze whether the competing debts arise from the same transaction.

Johnson asserts that recoupment generally occurs between contractually-related parties, not those linked by a social welfare program like Social Security. Johnson asks the Court to apply a narrower standard for recoupment than the "logical relationship" standard that the government endorses. He contends that his receipt of SSI benefits is not logically related to his requirement to repay RIB benefits. Johnson also argues that,

8

even were the Court to adopt the logical relationship standard, it does not change the fact that recoupment is still restricted to parties linked by contract. He therefore argues the bankruptcy court correctly held that recoupment did not apply, as there is no contractual relationship between the parties and the debts are not part of the same transaction.

B. **Relevant law**

When a creditor and debtor are mutually indebted, the creditor may recoup his or her debt from the debtor despite bankruptcy, but only if the debts arise from the same transaction. *Chapman*, 265 B.R. at 807. When analyzing whether two debts arise from the same transaction, the circuit courts are split between two approaches: the "single integrated transaction" standard and the "logically related" standard. The Seventh Circuit has not yet addressed the question.

The Third Circuit has asked whether the debts are part of a "single integrated transaction." *Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984); *In re Univ. Med. Ctr.*, 973 F.2d 1065 (3d Cir. 1992). In *Lee*, the Third Circuit held that the SSA could not recoup overpayments made to a Social Security beneficiary who was in bankruptcy. *Lee*, 739 F.2d at 872, 875. *Lee* distinguished contractual transactions, which can give rise to recoupment, from statutory arrangements, such as the Social Security program, which cannot. *Id.* at 876. Johnson relies upon *Lee* to argue that the SSA cannot engage in recoupment, as there is no contractual relationship between him and the SSA. Yet in a subsequent case, the Third Circuit held that recoupment was appropriate for two claims arising out of a "single integrated transaction," even if there was no "express contractual right" to a recoupment. *Univ. Med. Ctr.*, 973 F.2d at 1080, 1081.

9

At issue in *University Medical Center* was the "Medicare account reconciliation process." *Id.* at 1080. Through the account reconciliation process, Medicare recovers overpayments for medical services made in previous years by, effectively, underpaying in subsequent years. *Id.* at 1080-81. The court held that the overpayments issued in 1985 were not part of a single integrated transaction with the payments made in 1988 from which amounts were withheld. *Id.* at 1081. "The 1988 payments were independently determinable and were due for services completely distinct from those reimbursed through the 1985 programs." *Id.* Because the debts arose from different transactions, the Third Circuit held, the government was not engaged in recoupment, and thus its effort to recover overpayments from the bankrupt provider was barred by the automatic stay. *Id.* Johnson urges the Court to join the Third Circuit in confining recoupment to contractual arrangements and to evaluate whether debts arise from the same transaction under the "single integrated transaction" standard.

By contrast, in cases similar to *University Medical Center* (though dissimilar from *Lee*), the First, Ninth and D.C. Circuits have determined whether action constitutes recoupment by asking whether the debts are "logically related." *In re TLC Hosps., Inc.*, 224 F.3d 1008 (9th Cir. 2000); *Holyoke Nursing Home*, 372 F.3d at 5; *United States v. Consumer Health Servs. of Am., Inc.*, 108 F.3d 390 (D.C. Cir 1997). In *TLC Hospitals*, the Ninth Circuit analyzed the same Medicare payment program the Third Circuit reviewed in *University Medical Center*. *TLC Hosps.*, 224 F.3d at 1011. The court concluded that previous overpayments were logically related to subsequent underpayments as "part of a continuous balancing process between the parties." *Id.* at 1012. Because the government's debt to Medicare providers logically related to the

10

Medicare provider's debt to the government—the overpayments, a strategy to accommodate uncertain medical costs, were purposefully reconciled through later underpayments—the Ninth Circuit concluded that the government sought a recoupment, so the automatic stay did not apply. *Id.*

In assessing whether debts similar to those in *TLC Hospitals* were logically related, the D.C. and First Circuits considered whether there was a statutory program that connects the debts as part of a single, ongoing transaction. *Holyoke Nursing Home*, 372 F.3d at 5, *Consumer Health Servs. of Am.,* 108 F.3d at 392. *Consumer Health* dealt with the same Medicare payment program that was at issue in *University Medical Center. Id.* The D.C. Circuit held that the government could recoup overpayments from a provider during the course of its bankruptcy case via withholding from its ongoing payments to the provider under the same program. *Id.* The court relied on the fact that in the relevant statute, "Congress rather clearly indicated that it wanted a provider's stream of services to be considered one transaction for purposes of any claim the government would have against the provider." *Id. See also Holyoke Nursing Home*, 372 F.3d at 5 ("Congress contemplated that the Medicare provider agreements would constitute a single, ongoing, and integrated transaction"). The government urges the Court to adopt the "logical relationship" standard to assess whether the debts arise from the same transaction and to consider Social Security's statutory scheme.

**C. Analysis**

The Court need not choose between the Third Circuit's narrower "single integrated transaction" standard for when a recoupment occurs for purposes of

11

bankruptcy and the broader "logical relationship" standard used by the D.C., First, and Ninth Circuits. Even under the broader standard, the attempt to recover Johnson's SSA assessment by withholding his SSI benefits does not constitute recoupment. The RIB-related debt that Johnson owes is not logically related to the SSI benefits that he now collects. On one side of the ledger is the debt Johnson owes to the government, which consists of the value of the RIB payments Johnson wrongly collected and an additional penalty. D.E. 6, Ex. 2 at 87 (Notice of Monetary Penalty). RIB payments provide support for retired individuals and are funded by the "Federal Old-Age and Survivors Insurance Trust Fund." *See* 42 U.S.C. § 401. The debt, which arises from Johnson's fraudulent conduct, is a fixed amount determined based on his past misconduct. On the other side of the ledger is the SSA's monthly obligation to provide SSI benefits. SSI payments provide support for disabled individuals and are funded by Congressional appropriation. *See* 42 U.S.C. § 1381. The debt, which arises from a monthly calculation determined by statute, can vary as the SSA recalculates the value of the benefit. *See id.* § 1382.

Johnson's debt to SSA—the fixed amount of wrongly obtained RIB benefits—is not logically related to the SSA's monthly debt to Johnson—the monthly value of his SSI benefits. A claim that is "entirely separate" from another claim is not logically related to that claim. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978) (addressing ancillary jurisdiction). Because the debts are not logically related, the Court concludes that they do not arise from the same transaction. Thus the bankruptcy court correctly concluded that the automatic stay applied to the SSA's attempt to recover Johnson's debt, even though the bankruptcy court applied different reasoning.

The Court's application of the "logical relationship" standard is consistent with the previously discussed decisions by the Ninth, First, and D.C. Circuits concerning recoupment of overpayments under the Medicare program. The system of varying Medicare payments purposefully links previous overpayments to subsequent underpayments in a complex effort to reimburse providers for the uncertain costs of medical procedures. *TLC Hosps.*, 224 F.3d at 1013-14. A logical relationship existed between the government's underpayments to the Medicare providers and the Medicare providers' debt to the government for previous overpayments under the same government program. *Id.* No such relationship exists between Johnson's debt arising from his fraudulently-received RIB benefits and the government's ongoing SSI payments to Johnson. Social Security does not enter into arrangements with its beneficiaries in which it anticipates underpaying them as a logical consequence of earlier fraudulent overpayments. *See id.* at 1011-12 (by compensating Medicare providers on an estimated basis, "underpayments and overpayments are an expected and inevitable result of this payment system."). And on a more basic level, SSI and RIB are two separate benefit programs, not a single program like the one at issue in the cases on which the government relies.

The Court acknowledges that the government relies on a statute that authorizes withholding of benefits in the situation referenced here. In the Court's view, the existence of such a statute is insufficient, without more, to make two otherwise unrelated debts part of the same transaction, even under the "logical relationship" test for when recoupment is authorized in bankruptcy. Finding otherwise would permit the government to recoup during bankruptcy plainly unrelated debts simply because

13

Congress permits it to do so outside of bankruptcy—for example, a hypothetical statute authorizing recoupment of long-past student loan debts from current Social Security retirement benefits. Whatever one might think of such a statutory scheme as a matter of policy, the question here is not whether a statute allows recovery of overpaid benefits outside of bankruptcy, but whether that same statute is, without more, sufficient to allow recoupment during bankruptcy, irrespective of the automatic stay. The Court concludes that it is not. To put it another way, the two debts here are not logically related, and the statute does not make them so. In this regard, the Court respectfully disagrees with the holding in *In re Wernick*, No. 16-cv-5313, 2016 WL 7212508 (N.D. Ill. Dec. 13, 2016), in which the court held, relying on the statutory scheme, that withholding Social Security benefits to recover earlier overpayments is recoupment.

The Court does not and need not address whether the government's recovery of the overpaid RIB benefits would meet the standard for a compulsory counterclaim. Although the government correctly identifies common law recoupment as the historical predecessor of the compulsory counterclaim, it does not follow that recoupment in bankruptcy should be assessed under the same standard as the one used to determine whether a counterclaim is compulsory under the Federal Rules of Civil Procedure. In assessing recoupment in the bankruptcy context, the "logical relationship" standard is appropriately construed narrowly, because recoupment, which favors the creditor who invokes the doctrine over other creditors, is an exception to the general policy in bankruptcy "favoring the equal treatment of creditors." *Chapman*, 265 B.R. at 807. By contrast, in determining whether a counterclaim is compulsory, the "logical relationship" standard is construed liberally to "carry out the philosophy of [Federal Rule of Civil

Procedure] 13(a)." *Burlington Northern R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990).

## Conclusion

For the foregoing reasons, the Court directs the Clerk to enter judgment affirming the decision of the bankruptcy court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 12, 2018